AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas
8/23/2021

# UNITED STATES DISTRICT COURT
for the
District of Kansas

Clerk, U.S. District Court
By _____AA_____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>the premises and devices located at<br>1016 South 15th Street, Parsons, Kansas<br>as further described in Attachment A | ) ) ) ) ) ) Case No. 21-6143-GEB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Kansas, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Production of Child Pornography |
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Receipt/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John V. Ferreira, SA, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/23/21

*Judge's signature*

City and state: Wichita, KS

The Honorable Gwynne E. Birzer, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, John V. Ferreira, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I have been employed as a Special Agent ("SA") of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") since 2004 and am currently assigned to the Kansas Internet Crimes Against Children Task Force (ICAC). Previous to my employment with HSI, I was a state trooper/detective with the Arizona Department of Public Safety for nine (9) years. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

2.  I make this affidavit in support of an application for a warrant to search the PREMISES known as **1016 South 15th Street, Parsons, Kansas**, hereinafter "RESIDENCE," further described in Attachment A, for the things described in Attachment B.

3.  This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the RESIDENCE specifically described in Attachment A of this affidavit, including any electronic devices and the content of electronic devices located therein, and any person located at the RESIDENCE, for contraband and evidence,

fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, which items are more specifically described in Attachment B of this Affidavit.

4. The statements in this affidavit are based in part on information provided by Kik, Snapchat, the National Center for Missing and Exploited Children (NCMEC), and other law enforcement officers, including Parsons Police Department, and Wichita Police Department/Sedgwick County Sheriff investigators, and on my review and investigation into this matter. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251 (production of child pornography), 2252A(a)(2) (distribution/receipt of child pornography) and 2252A(a)(5)(B) (possession of child pornography) are presently located at the RESIDENCE described in Attachment A.

## PROBABLE CAUSE

1. On about August 22, 2021, Kik submitted a CyberTipline Report to NCMEC identifying user "dustymuffin12" had uploaded 77 files, included depictions of prepubescent children engaged in sex acts (described below). As part of its report, Kik provided account information which included an associated email address of **drstrom96@gmail.com**.

2. As an example of the content reported by Kik, the user had uploaded a video file (identified as d62c12b8-125c-4f0e-abf6-cef1307580f8.mp4, which depicted an adult male sticking his penis into an infant's mouth.

Page 2 of 17

3. Another example was an image of a 4-5 year old boy seated next to an adult male with the adult's penis exposed next to the boy's face, suggestive that the boy will be made to perform oral sex. That image had been shared from the account 8 times between July 24 and August 4, 2021. This image was later determined to be a child in the custody or control of Dustin Strom, a resident of 1016 South 15th Street, Parsons, Kansas.

4. As part of its triage of the report, NCMEC conducted a search for other CyberTip reports relating to "drstrom96" and found three prior reports: 84947557, 94203089, and 95382480.

5. Report 84947557 related to a Kik report on or about January 22, 2021, where Kik identified user "bigbluedust" with email address **drstrom96@gmail.com** had uploaded 9 files of apparent child pornography. Several of these files depicted prepubescent children engaged in oral sex.

6. Report 94203089 related to a Snapchat report on or about July 2021, where Snapchat identified user "dustmuffin96" with email address drstrom96@gmail.com had uploaded a file depicting a 41 second video of a prepubescent female under the age of six, with her mouth around an adult's erect penis. She steps away from the male, removes her shorts, exposes her genitals, turns and exposes her genitals and anus to the camera, and adult male hand grabs her bottom to manipulate her further.

7. Report 95382480 related to a Snapchat report on or about July 14, 2021, where Snapchat identified user "vikkingd" with email address **drstrom96@gmail.com** had uploaded a file that Snapchat identified as apparent child pornography. The file depicted a movie of an adult male subjecting a prepubescent female to anal penetration.

8. NCMEC conducted a database check for the **drstrom96@gmail.com** account and found it connected to Dustin Kenneth Strom in Parsons, Kansas.

9. NCMEC conducted a query of Facebook and found a public profile for Dustin Strom in Parsons, Kansas. As noted by NCMEC personnel, "Please be advised the child seen on this Facebook profile appears visually similar to the child seen the exploitative content. I have saved a copy of this photo as Child Photo Facebook."

10. NCMEC also conducted a check of files reported to NCMEC to determine if they had been seen before. NCMEC determined there were nine files of what appear to be "newly produced" or "homemade" images. These included eight depictions, described as depicting "prepubescent male child who looks to be in distress. The child appears to be leaning against a possible adult male's leg. The possible adult male has his pants pulled down so his genitalia is exposed to the child." An additional file depicted "a close up of a possible prepubescent male's anus. An unknown individual's hand can be seen pulling on one of the child's butt cheeks and the child appears to have slight bruising on his right butt cheek."

11. At noon on August 23, 2021, Det. Jennifer Wright of the Kansas Internet Crimes against Children Task force was assigned the above set of related CyberTips. Det. Wright undertakes her review of the materials and finds Dustin Strom's Facebook profile, with the wallpaper image that includes a 4-5 year old boy. That boy appears to be the same as depicted in the images reported by Kik.

12. Additional research into Dustin Strom revealed he was residing at **1016 South 15th Street, Parsons, Kansas** with a female, identified as T.S.

Page 4 of 17

13. HSI Analyst Cynthia Overcash located the Facebook profile for T.S., which has photos publicly available. Det. Wright observed these photos included pictures of T.S., Dustin Strom, the same boy from Dustin Strom's wallpaper, and all three together. Again, the boy appears to be the same as depicted in the images reported by Kik.

14. Based on these content of the reported images and the images observed via Facebook, as well as the connection of drstrom96@gmail.com to each of the accounts and its connection to Dustin Kenneth Strom, I believe that probable cause exists to believe Dustin Kenneth Strom is the operator of the Kik, Snapchat, and Gmail accounts discussed above, and that he has engaged in the production, distribution, receipt, and possession of child pornography. Further, I believe that evidence, described in Attachment B, will be found at his residence, described in Attachment A.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

15. From my training and experience, I know that individuals who are interested in the sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography. In this instance, the operator of the above accounts appears to have sought out likeminded individuals via social media applications for the purpose of trading and obtaining child pornography.

16. From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain

evidence and artifacts of such activity. In this instance, the operator of the above accounts is relying upon the same internet-based email address to create various social media accounts, which are all accessible through at least one internet connected device. The device or devices is likely to retain information regarding the operation of the account, as well as evidence of child pornography activity. Moreover, I know these devices are likely to be kept near the user, and especially at their residence.

17.    I also know that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time.[1] Typically, the individual will keep the device(s) close-by, in part for immediate access for sexual gratification and to maintain secure control over the contraband material. In this instance, the social media account connected to the Gmail account reveal the user has repeatedly used social media accounts to distribute child pornography, which first required having a source of child pornography. Moreover, some of the pictures uploaded indicate that the user has either already produced or is otherwise creating images to indicate "production" content will be available for trade.

---

[1] *See United States v. Shields,* 458 F.3d 269, 279 (3d Cir. 2006) (noting nine month delay in applying for search warrant would not have supported staleness challenge due to context of child pornography offender behavior along with evidence of continuing offenses); *United States v. Schesso,* 730 F.3d 1040 (9th Cir. 2013) (finding delay of 20 months did not render probable cause stale in context of investigation); *see also United States v. Allen,* 625 F.3d 830, 842-43 (5th Cir.2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo,* 524 F.3d 115, 117-19 (1st Cir.2008) ( concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale).

18.     From my training and experience, I know that individuals who engage in communications with other individuals relating to the sexual exploitation of children will frequently retain information about these contacts, which can be used later to obtain access to other groups or forums relating to child pornography, or for exchanging additional child pornography. In this instance, the user of the above accounts appears to be able to find child pornography, and has done so over a period of several months, resulting in multiple uploads via social media.

19.     Based on the conduct observed on Kik and Snapchat, and based on my observation of child pornographer characteristics, I believe that the operator of the these accounts is the individual associated with the drstrom96@gmail.com account, Dustin Kenneth Strom, and that he evinces the qualities associated with child pornographers, outlined above. I expect the device(s) used by Strom have previously (and will probably still contain, as discussed below) additional child pornography, links to child pornography websites, or artifacts showing access to child pornography. I further expect the device(s) used by or in the possession of the user will probably contain evidence of communications, or attempts to communicate, with other individuals interested in the sexual exploitation of children, i.e., child pornographers.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

20.     As described above and in Attachment B, this application seeks permission to search for evidence of the crimes under investigation that might be found at the RESIDENCE (described in Attachment A). One form in which such evidence might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the

seizure of computers and other electronic storage media for subsequent offsite examination and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

21. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

22. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

23. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24. As further described in Attachment B, this application seeks permission to search for devices which may have been used in the commission of the crimes under investigation, and to examine those devices to locate: a) computer files that might serve as direct evidence of the crimes described on the warrant, and b) forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.

25. Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. There is probable cause to believe that this forensic electronic evidence (relating to the who, when, and how of the device's use) will be on any storage medium in the RESIDENCE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

   b. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

Page 9 of 17

detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

26. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely

reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

27. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is <u>not</u> present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28. In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

> a. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. This is true even for smartphone devices, which may require different forensic tools to access the content contained in the smartphone depending on the age or model of device. Therefore, it is likely that searching these computer devices will require tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the RESIDENCE. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

30. Because at least two adults appear to share the RESIDENCE as a residence, it is possible that the RESIDENCE will contain storage media that are predominantly used, and perhaps owned, by persons who are not involved in the crimes under investigation. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

31. I submit that this affidavit supports probable cause to believe that the RESIDENCE located at **1016 South 15th Street, Parsons, Kansas**, and described in Attachment A does contain evidence of violations of 18 U.S.C. § 2251, 2252 and 2252A and therefore respectfully request that this Court issue a search warrant for the search of the premises and devices located at **1016 South 15th Street, Parsons, Kansas**, being more specifically described in Attachment A which incorporated by reference as if fully set forth herein, authorizing the seizure and search of the items described in Attachment B herein.

Respectfully submitted,

John Y. Ferreira
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me, telephonically, on ___August 23___, 2021.

GWYNNE E. BIRZER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched*

The property to be searched are the premises and devices located at **1016 South 15th Street, Parsons, Kansas**, further described as follows:

Blue with white trim, wood-sided residential structure single-story (with attic) structure, facing west with 1016 on the front of the house above the front steps.

The following is a photo of the residence, from Google Maps Street View, from 2014. This is only meant to orientate the executing officers to the residence in relation to the street and neighboring property.



## ATTACHMENT B
*Property to be seized*

1. Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), in any format or medium, including computer files, prints, negatives, drawings, and paintings.

2. Any and all child erotica, in any format or medium, including documents, writings, and images or videos of children that do not qualify as child pornography but evince a sexual interest in children.

3. Any and all documents, records, or correspondence, in any format or medium, pertaining to operation of, or communication with, the Kik, Snapchat, and Gmail accounts described in the attached affidavit.

4. Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the software or programs or applications contained therein, that may be or are used to:

    a. produce, distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

    b. seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and

      c. communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children.

5. Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the data or information on the device, which may reveal indicia of ownership, access, or use of the account and websites described in the attached affidavit.

6. Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

7. Any and all cameras, film, videotapes or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

8. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

12. Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.

13. Any of the clothing and items visible in the image reported by Kik, referenced in the attached affidavit of probable cause, and known to law enforcement.